## MATTHEW HENDERSON v. N. E. ALLOWAY.

### April Term, 1878.

EASEMENT — RIGHT OF WAY — ONLY ACQUIRED BY DEDICATION OR ADVERSE USE. — The public cannot acquire a right of way by mere use which is permissive, and not adverse, and without any intention on the part of the owner of the land to dedicate the way to the public.

*George B. Guild*, for complainant.
*T. M. Steger*, for defendant.

THE CHANCELLOR : — This bill was filed on August 14, 1876, to enjoin the defendant from building upon a slip of land, ten feet wide, adjacent to and extending the full depth of the lot of complainant, because it constituted a public alley. The injunction sued out was, however, dissolved on the coming in of the answer denying the fact to be as alleged. The case is now before me for decision on the merits. The issue is one of fact, which, it might have been supposed, could be readily established or disproved. Yet the parties and their counsel have so successfully exerted themselves that the satisfactory determination of the point involved has given me more trouble than any case submitted to me since I have been on the bench.

Lots 60 and 61, in the original plan of Nashville, lie adjacent to each other, on the west side of Cherry Street, running back to an alley, lot No. 60 being north of lot No. 61. The complainant owns the northern part of lot No. 61, and the defendant the southern part of lot No. 60, complainant's deed calling for fifty feet front on Cherry Street, and the defendant's deed for eighty-eight feet front. The complainant has only traced his title back to the month of May, 1865, while the defendant has gone back to June 26, 1855. From 1859, the rear of the supposed alley has been closed by a fence built by the defendant, while the front of the alley has, from the same time, been occasionally closed by

a fence with a door in it, or by a gate, the former being often down, and the latter open for indefinite periods of time. For several years previous to 1859, the alley was open and used as a public passway by vehicles and foot-passengers. The character of that user, whether permissive or of right, would determine the question.

The persons under whom complainant claims acquired title to the front of their lot from Washington, and to the rear from Watson, in May, 1865. These deeds and all the subsequent conveyances, including the conveyance to complainant, call for an alley ten feet wide as the northern boundary of the premises conveyed. The call is for an alley, not saying public alley, and the deeds do not undertake to convey any part of the alley. The title thus acquired is not so old as that of the defendant by ten years, and begins several years after the defendant had closed the rear of the alley, and put up a fence or gate at the front end. The deed under which the defendant claims was executed to him on June 26, 1855, by the clerk and master of this court, and undertakes to convey to the defendant, in fee, part of lot No. 60 in the original plan of Nashville, " fronting eighty-eight feet, more or less, on the west side of Cherry Street, and running back, at right angles with said street, the full depth of lot No. 60, and bounded on the south by the property of Thomas Washington and Matthew Watson, and on the north by that of Mrs. Matilda Catron, being the same on which the Adelphi Theatre building now stands," and being the same lot of ground conveyed by Hetty Lanier, Samuel B. Lanier, and Felix R. Lanier to Hugh Kirkman and others, for the benefit of said theatre company, by deed bearing date May 29, 1849. This deed, it will be noticed, says nothing of any alley, and calls for the Washington and Watson property, subsequently and now the premises of the complainant, as the southern boundary. Obviously, the burden of proof is upon the complainant.

The bill says : " Complainant would show the court that

Dr. John Shelby and L. P. Cheathem, as far back as the year 1824, made a formal dedication of said ten feet of ground to the public by deeds, and that every deed in regard to said property since that date has recognized the fact that it was a public alley." The proof offered to sustain the first of these averments consists of the certified copies of two registered deeds of L. P. Cheathem, executed in the years 1824 and 1825. The first of these, dated February 20, 1824, purports, for the consideration of $100, to convey to John Shelby, and his heirs forever, " an undivided moiety of ten feet of ground, to wit, an equal interest in the alley said Cheathem has laid off of his lot No. 60, running back the full width of said lot; to have and to hold the aforesaid land in equal moieties, and with equal privileges of ingress and egress, to him, the said Shelby, his heirs and assigns forever." Manifestly, this deed is a private conveyance, for a money consideration, of the use of an alley, and not a dedication of any alley to the public. Moreover, the location of the alley, whether to the north, east, or south of lot No. 60, does not appear. The expression " running back the full width of the lot " is equivocal; for the width is not, ordinarily, used to signify the depth of the lot, and the reference may be to the alley which, the proof shows, runs in the rear of lots 60 and 61, or to Park Alley, a noted public alley on the north. And, besides, there is no evidence to show that Shelby, to whom a moiety of the alley is conveyed, ever had any interest in lot No. 61, or that Washington and Watson held title under him. The other deed filed was executed on February 23, 1825. By it, Cheatham sold and conveyed to Bernard Vanleer, in fee, the one-fourth of lot No. 60, except so much thereof as has been heretofore " conveyed by me to John Shelby, to wit, an undivided half of the ten-foot. alley," the portion intended to be conveyed " being that part of lot No 60 that adjoins the lot No. 61, formerly owned by E. S. Hall, and that portion of said lot that takes

off the south end at parallel lines." The conveyance, it will be noticed, is of the south end of lot No. 60, that adjoins lot No. 61. There is clearly no dedication of an alley to the public, but the conveyance of the whole land up to lot No. 61, the reservation being of the private right conveyed previously to Shelby, without locating the alley in which Shelby had acquired a right. Thus far, there is no dedication of any thing to the public. The complainant fails, therefore, to establish " a formal dedication of said ten feet of ground to the public " by Dr. John Shelby and L. P. Cheathem, by deed.

The other averment of the bill is, " that every deed in regard to said property since that date has recognized the fact that it was a public alley." If the " property " in regard to which every deed has recognized the existence of a public alley means lot No. 60, then there is no evidence whatever to sustain the averment. For the only deed " in regard to " lot No. 60, since that date, which has been introduced in evidence, is the defendant's deed, and that does not mention the alley. If the " property " intended is the alley itself, the averment is not sustained, there being no subsequent deed conveying the alley. And if the " property " means lot No. 61, the only deeds introduced touching that lot are those under which the complainant claims, and they only go back to May, 1865, long after the defendant acquired his title, and, although they call for the alley as a boundary, do not call for it or recognize it as a public alley.

The bill fails, therefore, so far as it rests the complainant's rights upon the dedication of the supposed alley to the public by deed, and by subsequent continuous recognition thereof by conveyances of the property. Curiously enough, too, the title of the defendant is in no way connected with that of Bernard Vanleer, so as to fix him with notice, through his title-papers, of the reservation in favor of Shelby. And, as we have seen, the complainant's title

is not connected with that of Shelby so as to confer upon him, under the *habendum* clause of his deed, which includes "hereditaments and appurtenances," the private right acquired from Cheathem. The complainant is, therefore, without any right of way in the supposed alley, so far as appears, and has not established the dedication of the alley to the public by deed. It remains to be seen whether he has been more successful in showing the existence of a public alley by actual user.

There is no evidence whatever that the city authorities have ever worked upon this alley, or exercised over it acts of ownership. Two maps of the city are introduced in evidence, showing an alley where the complainant claims that the public alley exists. But these maps were issued within the last three or four years, and were gotten up by private enterprise, not by the city authorities. They are merely suggestive or at most persuasive, of the previous existence of an alley at that place, without affording us any clue to the date or mode of its creation. The only other proof on the subject consists of the testimony of witnesses, and establishes beyond question the existence of the alley, and its user by the public for many years. The difficulty is in determining whether the user was merely permissive, or by right.

The evidence may be thus summarized: One witness says he has been a resident of Nashville since 1836, and that said alley was an open public alley in that year, " and remained so until some considerable time after the old theatre was built." Another witness says his first recollection of the alley was thirty-five or forty years ago. It was then used as a public alley, and he recollects going up it that far back. Another has known the lot for twenty-eight years, and that the alley has been between the complainant's stable and the theatre building since his first recollection; and that the theatre has been built between twenty-four and thirty years. Another witness, who was

born in 1839, in the vicinity, says he knew the ground before the theatre was built, and that there was an alley on the south side of the lot then, and after the building was erected. One other witness testifies to the public user of the alley from 1851 to about 1859. Three or four witnesses depose to the existence of the alley at later dates. The proof is clear, that since 1859 the alley has not been used as a thoroughfare, and only occasionally, to haul in coal or other freight, for the theatre itself.

From this testimony, it seems to be clear that from the erection of the theatre, and perhaps for a short period previous thereto, an alley did actually exist, and was used by the public for several years, and until the year 1859. After that, although the witnesses speak of the alley as a fact, there is no proof of user by the public. Two witnesses go back several years before the erection of the theatre, and state generally that there was a public alley, but give no instances of actual user. Still, the evidence is very strong in favor of a public alley, and establishes beyond doubt a public use from about the time of the erection of the theatre to the year 1859.

The defendant has introduced only one witness, who speaks from actual knowledge of the premises from as early a period as any of the complainant's witnesses. He says, he has known the property for about forty-five years; that he was related to Bernard Vanleer, who, it will be recollected, bought the lot from Cheathem in 1825, and who, the witness says, lived on the lot. The witness says he was often at the house; and that, during the time Vanleer lived there, and his wife after him, there was no public or open alley, but a private way, closed by a gate, by which Vanleer had access to his stable, which was built "at the southwest corner of his lot, and right against and along Washington's line." This stable, the witness thinks, was not removed until the Adelphi Theatre was built.

This testimony is direct, based upon personal knowledge,

and entirely conclusive that there was no public alley so long as Vanleer and his wife lived on the place. Such testimony necessarily outweighs the general testimony of two or three witnesses who speak from recollection, without specifying facts of actual knowledge. The witness does not state when Vanleer's wife ceased to live on the place, nor fix positively the date of the removal of the stable. He says, however, in another part of his deposition, that he has not been familiar with the property for the last twenty-five years, which, his deposition being taken in 1877, would go back to 1852. The deed of the defendant shows, by its recitals, that the deed to the theatre company was made in 1849; and the erection of the theatre, if previous to this year, would probably only antedate it two or three years, the usual period between a title-bond and a deed under the old *régime* of *ante bellum* usage and solvency.

If, now, the stable of Vanleer was not removed until the theatre was built, the existence of the alley cannot be considered as established before that date, and must, in the absence of any proof showing a different origin, be treated as the act of the company. There is proof to show that there was a side entrance on this alley to the gallery of the theatre, and the alley may have been created for its own purposes. That it was afterwards, and for several years, used by the public is certain, but the use may have been permissive. I do not understand that the public can acquire a right of way by mere use which is not adverse. *Jackson* v. *The State*, 6 Coldw. 532; *Scott* v. *The State*, 1 Sneed, 629; *Mathis* v. *Parham*, 1 Tenn. Ch. 533. In order to work this result, there must be an intention to dedicate the way to the public. *Worth* v. *Dawson*, 1 Sneed, 59. All the evidence shows that this alley is not needed for the public convenience, the use being only shown to have been by a few individuals, whose lots ran back to it, or to the alley in the rear of lots 60 and 61. Nobody complained when the alley was closed, in 1859, and the complainant, as we have

seen, only acquired his title in 1865, and has shown no deed calling for the alley previous to that date. The deeds of 1865 might call for the alley, because it had been in existence for over fifteen years, during nine or ten of which it was certainly open.

The result is, that there is no satisfactory proof of the dedication of this alley to the public, and the evidence only establishes a user which may have been permissive. I am constrained to return the Scotch verdict, "not proven." The costs will be divided.